UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TYRONE DENNY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-04663-SEB-DML |
| | ) | |
| WIGGINS, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**Order Denying Motion for Summary Judgment**
**Filed by Defendants Feldkamp, Kemp, Coffey, and Prulhiere**

Plaintiff Tyrone Denny, an inmate at Pendleton Correctional Facility ("Pendleton"), brought this civil rights action pursuant to 42 U.S.C.§ 1983 alleging violations of his Eighth Amendment rights. Defendants Feldkamp, Kemp, Coffey, and Prulhiere[1] moved for summary judgment. Mr. Denny responded to the motion for summary judgment, and the defendants filed a reply. Because the defendants designated additional evidence in their reply, Mr. Denny filed a sur-reply. *See* S.D. Ind. Local Rule 56-1(d). The motion is now ripe for review. For the reasons explained in this Order, there exists a genuine issue of material fact, and the defendants are not entitled to judgment as a matter of law.

**I.**
**Summary Judgment Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment

---

[1] Due to difficulties issuing process to Lieutenant Wiggins, she is not a party to this motion for summary judgment. In this Order only and unless otherwise noted, any reference to "the defendants" refers only to Investigator Feldkamp, Lieutenant Kemp, Captain Coffey, and Investigator Prulhiere.

as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717

(7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Indiana University,* 870 F.3d 562, 573-74 (7th Cir. 2017). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson*, 477 U.S. at 255.

## II.
## Factual Background

Mr. Denny alleges that on December 17, 2015, he was attacked in his housing dormitory by four other inmates incarcerated at Pendleton. The complaint states that the defendants knew of the threat to Mr. Denny and failed to prevent the attack, demonstrating deliberate indifference to a known risk of serious harm. The following facts are taken from Mr. Denny's deposition, which was designated by the defendants in support of their motion,[2] and are presented in the light most favorable to Mr. Denny as the non-movant.

Mr. Denny was placed in administrative segregation at PCF on July 13, 2015. Shortly after, another inmate who was serving as a wheelchair pusher informed Mr. Denny that "they was going to do stuff to [him] or certain stuff was supposed to happen to [him]." Dkt. 56-2 at 17:13-16, 21:20. Specifically, the inmate told Mr. Denny that other inmates were going to "get" him when he got

---

[2] Mr. Denny designated as evidence several requests for interviews he purportedly filed from September to November 2015. The defendants argue that the requests for interview designated by Mr. Denny were not disclosed during discovery and thus should not be considered by the Court. *See* dkt. 82 at 4-6. Because Mr. Denny's deposition testimony alone establishes a genuine issue of material fact, the Court need not address the requests for interview submitted by Mr. Denny.

out of segregation because the other inmates believed Mr. Denny had "checked into" segregation, meaning that he had provided information to prison officials about other inmates.

On August 20, 2015, Mr. Denny met with Investigator Prulhiere and Investigator Feldkamp and told them "what [he] heard in terms of the threats." *Id.* at 26:2-10. He explained that other inmates thought he provided information on them and that was why they "got their stuff caught up." *Id.* at 28:11-13. Mr. Denny told Investigator Prulhiere and Investigator Feldkamp that he had heard that "people wanted to attack [him] and hurt [him]." *Id.* at 27:23-25; *see also id.* at 29:11-17. Investigator Prulhiere told Mr. Denny that he would put in a transfer request and that prison officials were not going to "take the chance" and put Mr. Denny "back out there." *Id.* at 27:18-22.

Despite being told that he was being transferred to another facility, on August 30, 2015, Investigator Feldkamp visited Mr. Denny and informed him that he was being removed from administrative segregation and placed in the F South dormitory. Investigator Feldkamp said he did not want to remove from Mr. Denny from administrative segregation, but they needed the bed space. When Mr. Denny reminded Investigator Feldkamp of the threats against him, Investigator Feldkamp said Mr. Denny would not be there long. When Mr. Denny suggested that he be returned to N Central—the housing unit he was assigned to before being placed in administrative segregation—Investigator Feldkamp promised to look into a transfer and said Mr. Denny would go to F South "for right now." *Id.* at 33:20-34:11. After Mr. Denny again expressed discomfort with going to F South, Investigator Feldkamp said he had no choice.

Mr. Denny spoke with Investigator Feldkamp again within the first week of being placed in F South and throughout the time he was housed there. He also spoke with Lieutenant Kemp and Captain Coffey. On an almost daily basis, Mr. Denny expressed his concerns. Anytime he saw one of them, he would try to talk to them. He had conversations with the defendants, sent requests for

interviews, and filed grievances. During the conversations, he would tell the defendants that he did not feel comfortable in F South because people were still talking about "doing stuff to [him]" and threatening him. *Id.* at 44:8-44:5. He also told the defendants that "people tried to steal [his] stuff and start with [him]." *Id.* at 44:15-16; *see also id.* at 49:1-8.

When Mr. Denny asked Investigator Feldkamp, Lieutenant Kemp, or Captain Coffey about being transferred, they all said that it was "out of [their] hands" and they could not do anything to help him. These individuals also did not respond to the grievances and requests for interview submitted by Mr. Denny.

Although Mr. Denny did not speak with Investigator Prulhiere about the threats against him after the interview on August 20, 2015, he sent several requests for interview to Investigator Prulhiere. Investigator Prulhiere did not respond to these requests.

## III.
## Analysis

Mr. Denny contends that the failures of Investigator Prulhiere, Investigator Feldkamp, Captain Coffey, and Lieutenant Kemp to act demonstrated deliberate indifference to an imminent risk of serious harm and thereby violated his Eighth Amendment rights. The defendants argue that they are entitled to judgment as a matter of law because they had no knowledge of such a risk. For the same reason, they argue that they are immune from Mr. Denny's claim under the doctrine of qualified immunity. However, the undisputed facts the defendants have presented to the Court leave material issues of fact for trial and preclude summary judgment on either issue.

### A. Eighth Amendment Deliberate Indifference

Prison officials have a duty to protect those in their custody from violence at the hands of other inmates. But a "prison official is liable for failing to protect an inmate from another prisoner only if the official 'knows of and disregards an excessive risk to inmate health or safety.'" *Gevas*

5

*v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Thus, an Eighth Amendment failure-to-protect claim has objective and subjective components. The harm to which the prisoner was exposed must be an objectively serious one. *See Gevas,* 798 F.3d at 480 (being stabbed by cellmate constitutes serious harm); *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005)[3] ("a beating suffered at the hands of a follow detainee . . . clearly constitutes serious harm"). The subjective prong of the deliberate indifference standard "requires that the official must have actual, and not merely constructive, knowledge of the risk in order to be held liable; specifically, he 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference.'" *Gevas,* 798 F.3d at 481 (*quoting Farmer*, 511 U.S. at 837). In addition to knowing that the inmate faced a substantial risk of serious harm, an official will only be liable when he disregards that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 847; s*ee also Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006).

The defendants do not contend that they are entitled to summary judgment because they reacted appropriately to Mr. Denny's expressions of concern about his safety. Indeed, the undisputed evidence shows that the defendants did nothing in response to Mr. Denny's concerns. Instead, the defendants ask for summary judgment on the subjective element. They argue that no reasonable trier of fact could find that they had *specific* knowledge of a *specific* threat to Mr. Denny's safety.

---

[3] *Brown* considered a failure-to-protect claim by a detainee awaiting a civil commitment trial, not a convicted prisoner, but nevertheless applied the Eighth Amendment deliberate indifference standard. *See* 398 F.3d at 910.

"Complaints that convey only a generalized, vague, or stale concern about one's safety typically will not support an inference that a prison official had actual knowledge that the prisoner was in danger." *Gevas*, 798 F.3d at 480–81. However, the Seventh Circuit "has often found deliberate indifference where custodians know of threats to a *specific detainee* posed by a *specific source*." *Brown*, 398 F.3d at 915. "In failure to protect cases, a prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *Gevas*, 798 F.3d at 480 (internal quotations and citations omitted). In evaluating the specificity of an inmate's complaint to prison officials, it is important to remember that "[f]ailure-to-protect claims are predicated on a prison official's subjective knowledge . . . , not just the ability of an inmate to [communicate] detailed complaints." *Sinn v. Lemon*, 911 F.3d 412, 422 (7th Cir. 2018).

The undisputed evidence, even as presented by the defendants, would allow a reasonable fact-finder to conclude that the defendants had specific knowledge of a threat to Mr. Denny's safety. Before being removed from administrative segregation, Mr. Denny informed Investigator Prulhiere and Investigator Feldkamp that there were threats against him because other inmates thought their items had been confiscated because Mr. Denny informed on them. Investigator Prulhiere said he would transfer Mr. Denny because they did not want to put him "back out there." Dkt. 56-2 at 27:22.

After his placement in F South and throughout the time he spent there, Mr. Denny had almost daily interactions with Investigator Feldkamp, Captain Coffey, and Lieutenant Kemp in which he informed them of the threats against him and his concerns about his own safety. He told them that other inmates were out to get him and that other inmates tried to steal his belongings. In

addition to having conversations with the defendants, Mr. Denny submitted requests for interviews and filed grievances. None of the defendants responded to the requests and grievances.

Although the defendants argue that Mr. Denny's statements conveyed only a vague concern about his safety because he could not identify who was threatening him and when the assault would occur, *see* dkt. 55 at 11-12, "what matters is the relevant defendant's subjective awareness, which includes the inmate's complaints along with any other information that defendant may have." *Sinn*, 911 F.3d at 421 (quoting *Farmer*, 511 U.S. at 842). Mr. Denny repeatedly expressed concerns to the defendants over a span of over three months. Investigator Feldkamp, Captain Coffey, and Lieutenant Kemp also knew that other inmates had attempted to steal Mr. Denny's property. Although Mr. Denny did not know who would assault him or when the assault would occur, he knew that other inmates were out to get him because they believed he had served as an informant. Mr. Denny has therefore raised a triable issue of fact as to whether the defendants had subjective knowledge that Mr. Denny faced a substantial risk of harm. *See Gevas*, 798 F.3d at 482 ("[A] determination of what the defendants actually knew will almost certainly turn on an assessment of each party's credibility, for rarely is there direct, let alone irrefutable, evidence of an individual's subjective mental state.").

### B. Qualified Immunity

Qualified immunity protects government officials from liability so long as their conduct does not violate clearly established constitutional or statutory law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To withstand the defense of qualified immunity, a plaintiff is required to show that (1) the official violated a constitutional or statutory right, and (2) the particular right violated was "clearly established" at the time of the incident. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)

(citation omitted). The facts are taken in the light most favorable to the plaintiff. *Williams v. City of Chicago*, 733 F.3d 749, 758 (7th Cir. 2013).

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)); *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014). The Supreme Court has recently emphasized that courts ought "not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (citations omitted). There does not need to be "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix*, 136 S. Ct. at 308 (quoting *Ashcroft*, 563 U.S. at 741); *Estate of Perry v. Wenzel*, 872 F.3d 439, 460 (7th Cir. 2017) (noting qualified immunity analysis does not require a case with the exact same fact pattern).

The defendants argue that qualified immunity entitles them to summary judgment because "[n]ot only is there a lack of case law clearly establishing a constitutional right to protection in the face of vague concerns for safety and wishes for relocation, the case law clearly establishes such facts are insufficient to give rise to a constitutional right." Dkt. 55 at 15. The defendants reiterate the argument they asserted on the merits of Mr. Denny's claim.

This argument rests on a factual premise that the Court may not grant at summary judgment. For the reasons explained above, a reasonable trier of fact could find that Mr. Denny "complained to prison officials about a specific threat to his safety." *Gevas*, 798 F.3d at 480. Clearly established law holds that the defendants violated Mr. Denny's Eighth Amendment rights if they disregarded such a complaint. *See e.g.*, *Sinn*, 911 F.3d at 422 (denying qualified immunity because it was reasonable to infer that the defendant had requisite knowledge of threat and took no responsive action, and it is well-settled and clearly established that "such a failure constitutes deliberate

indifference"); *Gevas*, 798 F.3d at 475 (reversing judgment as a matter of law for defendant prison guards because plaintiff testified that he informed them and gave them written notes describing specific threats of violence from a specific inmate); *Pope v. Shafer*, 86 F.3d 90 (7th Cir. 1996) (per curiam) (affirming jury verdict in favor of plaintiff who was beaten by inmates after he informed prison staff of a credible threat and they failed to take immediate action); *Gidarisingh v. Pollard*, 571 F. App'x 467, 470 (7th Cir. 2014) (reversing summary judgment for prison guard based on evidence that he received note from prisoner describing credible threat of violence from a specific inmate). Because the undisputed facts would allow a reasonable fact-finder to reach that conclusion, the legal foundation for the defendants' qualified immunity argument does not apply here.

## IV. Conclusion

For the foregoing reasons, the motion for summary judgment filed by Investigator Feldkamp, Lieutenant Kemp, Captain Coffey, and Investigator Prulhiere, dkt. [54], is **denied**.

The **clerk is directed** to correct the spelling of the defendants' names on the docket as follows: defendant Kent should be Kemp; defendant Coffee should be Coffey; defendant Felkamp should be Feldkamp; and defendant Puliere should be Prulhiere.

**IT IS SO ORDERED.**

Date: 7/23/2019

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

TYRONE DENNY
160500
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Kelly Cochran
INDIANA ATTORNEY GENERAL
kelly.cochran@atg.in.gov

Lyubov Gore
INDIANA ATTORNEY GENERAL
lyubov.gore@atg.in.gov